Good morning, Your Honors. Your Honors, on the eve of Valentine's Day, the issue before this Court is, does Brighton have a monopoly on decorative hearts? And the answer, based on copyright law in this circuit, is no. And the Court can reach that conclusion in one of two ways, based on the law in this circuit on copyright infringement. There's an easy way, and there's a hard way. I'm sort of inclined to begin with the easy way. Maybe it's just the nature of the way that I am. And the easy way would be to follow the analysis in the Rosenthal case by this circuit in 1971. And there, the Court stressed that, which we all know, which is the policy behind copyright law, is to protect artistic expression and to encourage artistic expression for the public good. In Rosenthal, the issue, the disputed policy. We're talking copyright here, right? Yes, Your Honor, copyright. So in Rosenthal, the – How many of the – the injunction ran to several items, right? Yes, Your Honor. How many of those were supported by – only by the copyright? Five were – five purses were alleged to violate the copyright. Because they had the same heart, hollow heart design that appeared on the Carolina watch. That is the allegation, Your Honor. That is what the trial court found. And the reason I say that this Court can decide that that copy – that that Renaissance RGI – Yes. And also in the excerpts of record, Your Honor, the – page 22 of the excerpts of record is the watch. Yeah. Copyright. But that wasn't my question. My question is which bags, which of your clients' items were – And the bags on page 191 is the – a picture of one of the allegedly offending bags. That wasn't my question either. Oh, sorry. My question is which bags were enjoined based on the copyright infringement? Which means as for a group, okay? Which – Do we have pictures of the bags that were enjoined? The injunction was based on three grounds, copyright, trademark, and trade dress. Yes, Your Honor. And they support different theories and support injunction of different items, okay? Yes, Your Honor. So the question I'm asking is very simple. Which bags were enjoined on grounds of copyright? Of copyright. In whole or in part. So even though they might have been enjoined based on something else, which ones were enjoined because of copyright? I think actually probably the best pictures of them in the excerpts of record are under tab 8. Okay. The – Tab 8 is a declaration? Yes. And then there are a series of photos starting on page 191. Okay. 191. That is a – one of the copy – the alleged copyright infringing purses. 191. And then there's a tag on 192. There's another one on 193. Okay. So 191, 193. Then – 195. In between each picture of the purse is the tag. So then it's 195. 195. 197. 197. And I think 199 is the last. 199. Those are the fives that are enjoined in part because of copyright. Because of this copyright. Now, they each have a heart, a hollow heart that looks very much like the hollow heart in the Carolina Watch. They do have some similarities. Your client can get around the injunction by using a different heart. Yes. Now here's – Could use a heart's bare kind of heart or something like that. I'm sorry? A different kind of heart. It is. And here's – I might not get around the trademark or – And just if you want to know why we're pointing out all the photos, the trademark – Well, you're pointing them out because I asked you. I know. The trademark is on – the picture of the trademarked strap and a heart is on page 18. No, I don't want to talk about that. You want a trademark. I asked you a specific question. I wanted to look – as you're talking about copyright – You want to be able to look at those photos. I want to look at those photos. Okay. Tell me why this isn't clear infringement. Okay. Let me tell you why. It looks to me like your client took something that could only have been designed by looking at the Carolina Watch and made this – closed a copy of it as one could make without actually making an identical copy. Well, let me answer the question – if that's the question, is are they the same and why is this not a copyright infringement? Let me explain that for you. First of all, this is – this watch is a useful item, useful article. Nobody, I think, disputes that because when you start with copyright – I must tell you, I read the part of your brief that went on at length about this is a watch and this is a purse. I didn't buy a word of it. You can spend time in a little argument arguing that, but it's not going to get you very far, at least not with me. Okay. You can copyright a part of a work. You can copyright a work, and if you take any substantial part of it, you don't have to take the whole thing, and it seems to me that when they take the heart, if that is copyrighted and it's copyrightable, then that's enough. It's a substantial part. Okay. If you use it on a purse as opposed to a watch that just doesn't cut much ice. Okay. Let me try to break you away from that notion through explaining why this copyright for this watch does not extend to the hearts on these purses in these five photos, and here's why. First, you have to start, if you're starting with a copyright issue, with what kind of article is it, and the case law and the copyright law itself tells us that useful articles can be copyrighted if there is an artistic design that's separate from the usefulness of the article. Okay. And the case law tells us, particularly if we look at, say, Judge Wardlow's decision in the watch case, which is the only one we actually have, or this Court has, the Severin-Montres case, has a nice analysis consistent with the Ninth Circuit law on the test to apply for a copyright dispute over a useful article, a watch. And what the Court says you do, consistent with Ninth Circuit law, is you have to first say, well, is what kind of item, useful item, useful article, can be copyrighted if the artistic design can be separated from the usefulness of the watch? The Court then goes through, and that, you know, I think her analysis, I recommend it to the Court because it seems to flow very nicely. The first thing you have to do when you're looking at the copyright of a useful article like a watch is say, well, what are the elements of that article? What makes that watch, that useful item, copyrightable? And the reason you have to do that is you have to figure out what's the idea and what's the expression of the idea. And one of the reasons I said that perhaps the easier you are doing exactly what I told you, I found wholly unpersuasive in your brief, but you can go ahead and your time is ticking down. You want to say this is a watch and this is a purse, and you're going to go through the whole thing and say you can't possibly have an infringement from a watch to a purse. Because you have to focus the purpose on the idea. I find it wholly unpersuasive. Okay, well, let me try another trick. There's nothing inherent in having a heart in a watch band. What it is is a decoration, and they've copyrighted the design, which is, you know, you could do a heart a thousand ways, maybe 10,000 ways, but I don't think you can do a heart by accident coming up with this design. So the double, the hollow heart with the hopes thing in the middle. And, you know, these things are obviously copied from each other. There's no doubt about it. Well, okay. Let me explain this way, then. If you don't like the useful article analysis that the circuit employs, then perhaps you should say if what you're saying is this is what is copyrighted here is the heart, then perhaps you should look at the only heart case from the circuit and see how that court decided that a heart couldn't be copyrighted. And that case is the Rosenthal case. And what the court there is saying, gosh, this spins your mind. Let me ask you a practical question. How difficult would it be for your client to fill that heart in and avoid a copyright problem by changing it enough, you know, so you guys can go back into production? Well, I think... All you have to do is instead of making the hollow heart, fill it in. You have a full heart in your... This purse with a dangling heart is not a hollow heart, right? It's not a big deal. You know, you got caught doing it. Well, I think it would be a big deal if this court were to say that Brighton could copyright a heart. I think that would be a big deal. It would, quite frankly, turn the copyright law on its head. It would say that something that belongs to the public, hearts, squares, triangles, the number one, the letter G, those items can be copyrighted and someone can own them so that no one can use artistic expression? That's not what the law says, Your Honor. The only copyrighted watch faces. So, you know, it can be done. It can be done. And what the case says, and, in fact, the Severin-Montrez case said a watch can be copyrighted. Of course it can if it has artistic design in it that's separate from telling the time. But here, the watch and the heart are one piece. What Brighton is telling you and what you're saying as well, Your Honor, and what the district court found is that that heart in the abstract can be copyrighted. But what they copyrighted was a watch with hearts on it. Now, to find that there is a substantial similarity between hearts on a watch and on a handbag. It has quite a few handbags with hollow hearts on them. This is Exhibit E. And, Your Honor, with all due respect, this is exactly the reason that RGI is before this Court is because what you're doing, Your Honor, is exactly what the district court did. And, quite frankly, it is probably what most people would think you should do is you just look and you say, oh, my gosh, they must have copyrighted that heart. Oh, my gosh, no one in America, in the world could ever use a heart that has anything like that design because they have copyrighted that heart. They didn't copyright that heart. If you just let me finish rather than sort of forging ahead and guessing, that's what I'm really going to say, and then answering your own question, maybe we'll save some time. If you look at this exhibit that they have in their brief, this is exhibit under exhibits. They have there's Exhibit B and then there's Exhibit E. Do you have that? Their brief or in the excerpts of record? No, I don't have their brief. I'm looking at their brief. Yes. And your question about it? I'm pretty much familiar with those photos. Okay. It looks to me like these are Brighton bags that have, although it's not entirely clear what these are, but that have a hollow heart attached to bags. That's not a copyrighted purse. That's not a copyrighted heart. The only thing they have a copyright on, Your Honor, is this watch. Hold on. Just answer my question. I'm answering your question. There's no copyright on those hearts. That's not what I asked. I'm sorry. I misunderstood. I think you didn't listen. I'm sorry. Okay. Are you going to look at that picture? Are we going to look at the same picture or not? Okay. It's the next page. It's Exhibit E. E? Yeah, E. Okay. Those are Brighton bags? I get a nod from the other side. I think I'm on the right track here. So they are. I can't tell from that. You can't tell? We looked them up. Oh, you have those photos. Okay. To me it looks like these are Brighton purses that have hollow heart ornaments. Is that true or false? Are these Brighton bags? These appear to be pictures of Brighton bags, and they appear to have some hearts on them. Well, I will go further than that. I say they look to me like they have hollow hearts. Well, maybe in the color photo you can tell a lot better. Why don't you look at the thing that I'm looking at? Don't you have a copy of a Poison Counselor's Brief? It looks like they probably are hollow in that photo. Thank you, Counselor. You don't have a copy of a Poison Counselor's Brief? No, we don't have the color photos. They only went to the court. They did not go to counsel. Well, was this an exhibit in the record? To me, these look like the very same hearts. They don't look like they look like the very same hearts as in the Carolina. But that heart isn't copyrighted, Your Honor. Doesn't the heart have to be copyrighted? Okay. I'm sorry. I'm not jumping ahead. I'm sorry. I'm following. Do they look like they're similar hearts? Well, they're shiny. They're silver. They're hollow. Do they look the same? Do they have the filigree? Do they have the same design? They are certainly similar in design. They have the shape of a heart. Your position is that the one is chubbier, fatter, if you can. You see, I think the better pictures are the ones. Than the Carolina heart? Than the Carolina heart. If you look at the Carolina heart in the exhibits and the excerpts of record on 22, the actual copyrighted photo, and you compare it with, say, 191, one of the purses the court said infringed the copyrighted watch with hearts on it, and you see the shapes of the hearts. One is fat and wide. One is trim and longer and elongated. It's hard to look more like the ones on the purses. I'm sorry. Say that again. Your client made it hard to look more like the purses rather than the watch. Well, there's no evidence that my client had any idea that it was making hearts that looked like anybody else's hearts. The evidence actually is the purses are made in China, and the only evidence we have about the design is that when the court issued the order telling RGI to stop making the purses, the client said, I've contacted the Chinese business and asked them to change the design on the purses. He says, I never intended to copy Brighton, never looked at Brighton hearts. In fact, Your Honor, this watch is no longer available on the market. So in order to have access to copying, you would think it would be around. In other words, if. Okay. Which purses, which of your client's products are affected only by the trademark claim? Only by the trademark claim. There's one, and it's at the end of tab 8 in the excerpts of record, page 217. And the dangle flame. It has a dangling. I'm sorry. The one with the dangle. That's it. That's the picture of it, Your Honor. And that is a dangle with a. Based on that photo. With a full heart, right? I'm sorry. That supposedly is a dangling heart. Why doesn't the French have a copyright? Well, the Court's analysis under the Sleekcraft case really has some flaws in it. And quite frankly, I think there are only two points on the trademark that the Court should focus on. And that is when the Court went through the numerous, the eight Sleekcraft factors, the Court said that the marketing channels used favors RGI, but said that the proximity of the goods favors Brighton. Now, really, those are kind of flip sides of the same point. They deal with the proximity of the goods factor deals with who buys it? Who buys it? And the marketing deals with how do you tell people to come buy it? The Court said one of those favored Brighton and one of those favored RGI. That was an abuse of discretion, and here's why. These purses, RGI's purses, are sold between the pet food and the eggs at Ralph. The consumers, therefore, would be different. This is another argument you were greatly enamored by in your brief. You spent a lot of time arguing a point which really is not in dispute. There's really only passing argument of point-of-sale confusion. Or they sort of argue it, but it's not their main point. Their main point is that people buy these things, they pull off the tags, and then they're walking around with these purses. And then other people who spend $300 on a Brighton bag will see them around and say, oh, you know, this has become so common. It's like Rolex watches. If everybody has a fake Rolex on, then people aren't going to spend money getting a real Rolex. So it's really not point-of-sale confusion. In our cases, including the horrible endoscope case. Not a horrible case, but a horrible instrument. The endoscope case says we don't look just at point-of-sale confusion. Even if we know that the buyer is not going to be fooled, even if we think the buyer buys it especially to fool, you know, knowing very well it's not, if it's likely to fool other people who observe the product, that's enough. And I just have a hard time concluding that, I mean, all of your discussion about point-of-sale confusion and channels of commerce doesn't really help you as to downstream confusion. And I think that's why in our reply, Your Honor, we really didn't focus on point-of-sale at all. In fact, we focused on the confusion after sale completely. And what we explained there is that what Brighton says is this is a really horrible-looking purse. It's made out of cheap leather, costs $15 after all. It has, Brighton calls them cap-gun-like hearts on it. And you'll notice in the numerous photos in RGI's purses, there are four to six hearts on every purse. At Brighton, there's never more than two, counting the dangling heart. Nonetheless, these cheap cap-gun, poorly constructed leather purses would confuse someone that they might be a $400 purse with silver hearts and fancy leather. Frankly, Your Honor, there's this ---- It depends on how closely you look and how close you are to observe. And it may be that you see the purse and you don't observe anything about the purse, but you see the person wearing it is wearing the kind of clothes that somebody who shops at Brighton wouldn't wear. Maybe a few short shorts and, I mean, you know, I ---- But their whole argument on trade dress and trademark is the dangling heart and only, not anything else. Just the dangling on a strap of leather, that shows it's Brighton. That's your argument, but you ---- Well, no, that's ---- Get into it. That's their argument, Your Honor. Our argument is that there is no confusion here. One strap doesn't identify one purse from another. There are differences in shapes and size, in the texture, in the cap-gun look of the hearts, and in the silver hearts on Brighton. And quite frankly, Your Honor, there's no evidence that anyone could be confused when looking after sale at the cheap purse they say we make and we do, or used to. I don't know. I look at them and it looks confusing to me. And from these photos. I don't know what else. I mean, you can't ---- Well, see, I guess the ---- If you're going for a preliminary injunction, you can't very well insist on surveys and market studies. Which is why, Your Honor ---- Big, expensive processes that take a long time. Well, they filed an ex parte application. They could have filed a motion and done that, Your Honor. I mean, it was their choice how they proceeded. And, you know, we had to just follow suit, which is why, getting back to that issue, if you look at the sleek craft factors, the Court doesn't just focus on is there, you know, is there some evidence that that mark identifies a scrap of leather with a heart, tells everybody Brighton, Brighton. The Court says we look at these eight factors. And if you look at who we market our purses to and who Brighton markets its purses to, you don't find anything in common. Anything in common. People, quite frankly, who buy Brighton purses at boutiques, which is the only place where they're sold, they're not marketed in grocery stores, by the way, would not be confused by some ---- Did you think I didn't know that after having read your brief? You think maybe I suspected that Brightons are sold in grocery stores? Well, then, if that's the case, Your Honor, you would probably agree that it was an abuse of discretion for the trial court to find that the marketing factors would favor Brighton. Let me ask you a question before we move to the Respondent here. But if Judge Huff is right on the copyright but incorrect in her determination on the trade dress, what difference does it make? What difference does it make if she's right on copyright? Well, then, since what the injunction did was cause our client to call the Chinese company and tell them to stop making the purses, the five that were copyrighted, that were alleged to be an infringement on copyright, if the court were to find that that was there, he could start making those purses. So it does make a difference in the production and the sale to this business. You know, either you didn't understand the question or I didn't understand the question. I thought Judge Malloy said, assuming there was a copyright injunction, what difference does a trademark or trade dress injunction make? Not does it make any difference if you get rid of the injunction. You know, we are smart enough to know that if you get rid of the injunction, altogether it makes a difference. You don't have to tell us that. The question was, assume there is a copyright injunction, the copyright injunction stands in place. What is affected by the trademark and trade dress injunctions? Your Honor, in direct answer, the difference would be if there is a likelihood of success because of a dangling strap with a heart, then the harm to our client for not being able to make any purses that, so if you sustain, let me make sure I understand your question, if you agree that the copyright was wrong and think that the trade dress was a correct ruling, the other way around. The other way around. The other way around. Assume that the trademark is an incorrect ruling. What difference does it make? It makes a big difference. If the client can now make purses that have hearts that dangle in some way, and perhaps the key difference in that, since, you know, it's hard to tell, quite frankly, from these smudgy photos exactly how similar they may be, goes back to the sleek craft factors and, you know, the marketing point, which really, I think, without dispute, has to be an abuse of discretion. So it does make a difference to a client that some. You have to learn to give simple answers to simple questions. You know, this is what courts really want, is a simple answer to a simple question. And the question you were asked is, if the copyright injunction stays in place, but the trademark and trade dress injunction are lifted, the answer is that the five purses depicted there that you showed me would still be enjoined, but this one with the dangling heart would not be. Right? This is the trademark injunction only applies to one purse. That's right. One purse with a dangling heart. That's right. So basically, the copyright injunction covers five purses. The trademark and trade dress injunction, one additional one. One purse. That's right. Okay. I think at least that's what I heard the question to be, and I think that, okay. Okay. Unless you have any questions, I'll save a couple minutes. Oh, actually, I won't save any for rebuttal. Thank you. Good morning, Your Honors. Sylvia Lartier of Brown, Woods and George for Brighton. With respect to the copyright issue, I think that the Court understands, I gather from the comments, that the issue is not, as it was stated today by counsel, which is whether Brighton has a monopoly on a decorative heart, but the issue is framed. You mean Valentine's Day can go forward even if the injunction stays in place? Brighton gives it permission to go forward. Teenagers all over the country will be grateful for that. Let's talk a little bit about trademark. Sure. Can you turn to your trademark application, Exhibit A of what looks like page 18? Yes. We're looking at the same thing, right? Yes. There's a picture there, and the things in dotted line are not part of the trademark. I'm sorry. Would you repeat the question? The things in the dotted line? There's a diagram. Correct. And part of it is in dotted or dashed lines. Correct. And that's not part of the trademark. That's just shown by way of background. Correct, Your Honor. The trademark is the dangling heart. Specifically disclaimed. Specifically disclaimed. Okay. So to find out what the mark is, you go to paragraph, sort of, there are two columns, and you start with, the mark consists of a heart-shaped design. Are you following along with me? Yes. And the strap, which appear on the side of a handbag. Correct. And I'm just wondering how broad that sweeps. I mean, it is limited to, first of all, to heart-shaped designs hanging from a side of a handbag. Do they cover heart-shaped designs dangling from the front of a handbag, or from the back, or from the top, or perhaps from the bottom of a handbag? That's a very good question, Your Honor, and I don't know the answer to it in terms of placement on all Brighton bags. I believe that it dangles from the side. Well, we know that the alleged infringing bag dangles from the front. Correct. So it's a question you're going to have to answer. Yes. And for your client's sake, I hope you can answer it by saying it doesn't matter which side, whether it's the front side or back side. Well, I think that's correct. At least it's an ambiguous issue. I mean, the way it is phrased here, and the way the picture depicts it, it sounds like it is the right or left side, rather than the front side or back side, or down side or up side. I think the answer is it doesn't matter what side, it's any side, that the trademark is actually the heart on a strap that dangles from a purse. Okay. Well, debatable, but let's move on. The heart here is depicted as a hollow heart. It's depicted that way in the picture, although it's described as just a heart, a dangling heart. Would it be, let's say it were a red plastic heart on a strap, would that be covered as well? From this description, it seems that way, although I think that the mark as used by the client is a silver dangling heart from a strap, Your Honor. What about gold? I mean, there is nothing here that specifies silver. There's nothing that specifies metal. You're correct. In this description, there is nothing as used as a silver dangling heart. In fact, the alleged infringing heart is not hollow at all. It doesn't look anything like the heart that is in the trademark. Correct, but the description doesn't say hollow heart. It says a heart. Well, but you know, a heart is a pretty common design. I mean, the more general you make your description of your trademark, the weaker you make the mark. That's true. You can't make a trademark of color, and you can't say, well, I'm going to trademark the picture of a house. If you're going to make a house your trademark, it better be a very specific house, drawn in a specific way. I don't think you can claim a trademark protection for all heart-shaped designs dangling from a piece of leather. Your Honor, some of the most recognizable and famous marks are very common marks. You know, the Playboy Bunny, the Target Target, the Nike Swoosh. The fact that they're common. What's the Target Swoosh? Did I say the Target? I'm sorry, I meant the Nike Swoosh and the Target Target. Excuse me if I'm wrong. The Nike Swoosh. The Swoosh is the sort of checkmark. It's a very famous trademark. Oh, sort of like a wave or something? Well, it's more like a checkmark. It's a fat checkmark. The Target Target, huh? The Target Target is a red target. I don't know how it's described in the trademark description, but that's how it appears in life. Well, let's say somebody had a Target Target, and rather than red and white, it were yellow and green. Exactly the same, but it were yellow and green. As I said... I have a hard time believing they can take something quite as generic as that. Now, the Swoosh is quite different because that doesn't look like anything in life. I mean, that's an entirely arbitrary mark. I'm sorry, you mentioned a third thing. Playboy Bunny? Well, no, I don't think Playboy has a trademark lock on rabbits. For example, on rabbit designs or on women dressed in rabbit costumes or anything of that sort. I think it's specific drawing. I mean, it's specific drawing that appears on... It's a line drawing, if I recall from... I understand what you're saying, and I understand the difficulties that are raised or the ambiguities that are raised by Exhibit A, which is the trademark registration. As used in life, the trademark is a silver heart dangling from a letter strap. The letter strap is litigation, not life. I understand. And you are, unfortunately... It's part of life. Excuse me? It's part of life, litigation. It sure is nowadays. Yes, for some people, unfortunately, a big part. But this is... I mean, you're the plaintiff. You don't have to be here. Correct. So it will not behoove you to complain too much about litigation. And if your client wants rights, it has to make sure that the rights it asserts are legally supported. You know, I just have a very hard time seeing where this, unless it is read so broadly as to cover every heart-shaped design dangling from a purse, really reaches the dangler there in the defendant's purse. I don't know what to call it, the one with the dangling heart. Is there a number for it so I can give a reference to it, 61-something? The purse, the infringing purse with the trademark? Yeah, that's the one. That's on the excerpts of record, page 217. I have a picture of it. I just don't know what it's called. I think they refer to it as their cathedral purse, and it's their item number. You managed to build so much disdain into that, the cathedral purse. I didn't mean to. I'm sure you didn't. I'll refer to the item number. Perhaps there will be no disdain in that. That's 81131. 81131. So 81131, as we now have established, is the only one affected that's not affected by the – that's affected by the trademark and also by the trade dress injunction. Correct. That was the alternative basis of the ruling. Well, I don't know. Why this dangling heart? I mean, why your trademark, which seems to, if read broadly enough, covers every conceivable dangling heart, no matter how large or how small or what material it is made out of or what – whether it's solid or whether it's hollow, whether it is colored, whether it is monochrome, unless you read it that broadly, in which case it becomes meaningless, I don't see why it covers this heart. I'm just wondering why it does. Well, in use, as I had stated before, Brighton's trademark, as it uses it, is a silver heart dangling from a leather strap, which is very similar to the one that you see on the Langdon Leather Cathedral purse that's depicted on page 17 of the excerpts of record, which is why I believe the district court made the determination when it had, you know, the two bags in front of it, that this was an infringement of Brighton's trademark. Well, how does that work? With respect to the trade dress, of course, goes the whole look of the bag. If you have a registration, you can't really go beyond the registration itself, right? Correct. There's no common law trademark anymore, at least not in the federal law. Not that I'm aware of. Okay. So you have to come within your license that you get from the trademark office. It's not a license. It's the claim that you have by filing a registration. So the dilemma you get into is that the claim you make is extremely broad. I mean, much too broad if read literally. So you have to narrow it down. You have to say, well, we're going to narrow it to something else to make it viable. And the most natural way to narrow it is to say, well, we're going to look at the picture of the thing you actually provided. And the thing you actually provided seems to provide a hollow heart. The trademark registration. Yeah. Yeah. With respect to, though, let me take a quick peek at the picture. Does it describe it as a hollow heart? No. As a heart. It's described as the mark consists of a heart-shaped design and a strap which appear on the side of a handbag which is depicted in dotted line outline. That was just referring to the bag. So there's no reference one way or another to hollow. To hollow or solid. If you look at it and infer that it's hollow, it's hard to tell. But if you look at the language. In this picture, it appears hollow. If you look at the language alone, it's much too broad to be a trademark. You cannot trademark every heart-shaped design from a string. I mean, it's out of the question. So you pretty much have to look at something to narrow it to some manageable size. Otherwise, you basically trademark every heart, conceivable heart, you can come up with, right? Well, as attached to a strap dangling from a purse. If you want to see pictures of Brighton's trademark, if you go to the color pictures that are in our brief. So you gave us color picture, but you didn't share with opposing counsel? I'm not sure that's accurate, Your Honor. I won't concede that, but I'm pinch-hitting here today. So I don't know what was served or filed. Okay. Fair enough. Talking more about exhibit D? Yes. Exhibit B in the left-hand column. B as in boy? B as in boy, first of all. In the left-hand column are the Brighton bags. And there are two examples of the trademark. The top bag and the third bag down. You can pretty clearly see. And also on the following page, exhibit D is in diamond. Brighton is on the left. Again, you can see the dangling heart. Now, you have to accept that dangling it out the front is okay, close enough. Pardon? You have to accept that dangling it out front, as opposed to the side, is close enough. Yes, I think it's any side of the bag. And also, if you look at exhibit E, the following page, which are all Brighton bags, there are also some examples of the dangling heart, some from the side side of the bag, some from the front of the bags. But they're on every bag. Okay. And what about the trade dress? You have to be pretty specific there. I mean, what do they have in common other than the fact that they're big black bags with hearts on them? Well, actually, they have quite a bit in common, Your Honor. The Brighton look is the use of exotic or costly leathers, things like crocodile and, you know, reptile. Well, they certainly didn't copy that. No, they use embossed leathers to get that look. They don't use the actual expensive hide, but they try to imitate the look by embossing the cow hide. Also, the use of silver-plated ornamentation on the bags and the prominent use of hearts. Can you take a look with me at that bag? Which one? The one we're talking about, the trade dress infringing bag. Sure. Which is also the trademark infringing bag, right? So it has a dangler, right? It has five hearts on it, as far as I can tell. Correct. So it has a little buckle-looking kind of heart about a quarter all the way down from the top in the middle. Right. Okay. And that's similar in some ways to the buckle type of heart that appears on the Brighton model, right? Yes. So they have that in common. So the reverse bell shape they have in common, right? Yes. And then they have the dangler in common. Correct. Okay. What they have that's different is that the three hearts at the bottom that they have that the Brighton bag does not have. Correct. Plus, do I see correctly that the Brighton bag has some metalwork connected with a strap? It appears that way. Not the dangler strap. The shoulder straps? Shoulder straps, yes. It appears that way. You can't tell really whether or not the appellant's bag does or not because it looks like it has plastic over that portion of the bag to protect it, I suppose. In this picture, anyway. That's right. Plus, their bag has the straps connect to visible metal something or other. Yes, they connect a little bit differently. Metal connector. But I would note also, again, that they use this embossing of the leather to give it the look of the rare exotic leather that Brighton uses. I have to digress, but this is another case where looking at things makes a difference. It does. I mean, it's the look and feel. We have terrible things to look at. You do. I agree. And I apologize for that. In every case. Yeah. What? Did you get color photos with the excerpts of record? No. No. I apologize for that. It's a shame. They bring them to court. There are CDs and such things, you know. It's a difficult record. I apologize for that. Well, you know, you are trying to maintain the district court's judgment in place. So the less we know, the better for you. So there's no need to apologize. I'm saying, you know, whoever is trying to persuade us here, the more we can look at, the better. Anyway. If Judge Huff only addressed the likelihood of confusion as it relates to the trade dress issue, is that an abuse of discretion to have not considered whether it's inherently distinctive or whether it had acquired some secondary meaning? You mean if she addressed likelihood of confusion only with respect to trademark but not separately with respect to? It looks like when she was addressing the trade dress issues that she only talked about the likelihood of confusion and that's it, didn't address any of the other. Well, I think that implicit in the decision that we were likely to succeed on likelihood of confusion is the notion that there must be a distinctive look. And so I don't think it was an abuse of discretion because I don't think you can get to the likelihood of confusion without that. And there was evidence, you know, with respect to advertising, with respect to sales, with respect to length of time that the bags had been in use. On the copyright claim, do you have a picture there of the copyrighted bags? Yes, the ones, the copyright infringing bags? Let me ask you a what-if question. You really don't have to answer it. Well, I hope that I can. I hope you can, too. What if they go back and they fill in the heart? Would you bring them up for a contempt? And they put it back in circulation. See where the hearts are, right? There's the hollow heart, right? There's the part of the heart that you can see through to the bag. Let's see if they fill that in. Yeah. Well, the question, Your Honor, is, I mean, as the infringing hearts currently stand, they are virtually identical to the Carolina copyright and also the heart as used by Brighton on its bags, which is, in effect, a derivative work. So they're virtually identical, and the district court did find that. The district court did not use those words in the order appealed from, but did make the point in the order that denied the motion for stay to elaborate that its findings were, one, a virtual identity. So right now, as we look at the hearts, they're virtually identical. If they were just to change one element, which is the hollowness of the heart, and fill it in, it would no longer be virtually identical, but you would still have a question as to substantial similarity. And I think that you... That's my question. Would substantial similarity be enough? Don't you need virtual identity because of the somewhat generic nature of the item? Only if there were merger of idea and expression. And I don't think that there can be merger of idea and expression with an ornamental heart that can be expressed in maybe not innumerable ways, but I think, as Your Honor said before, tens of thousands of ways. I mean, it's pretty, you know, you have here, in addition to the hollowness, you have the outline being three bands. So you have a solid band. Then the middle band is a braided band. Inside of that, again, you have a solid band. And at the center top of the heart, they curl down into a scroll shape. Underneath that, you have a chevron or an inverted V. As a strict matter of copyright law, you consider the hearts on your bags to be derivative works on your client's bags. They're derivative works of the Carolina copyright. Yes. But, you know, I believe without them that we still have our claims. I don't believe we need to have this derivative work. I didn't ask that question. Right. Yes. I do consider it a derivative work. So Carolina was a copyrighted work. Yes. And then these are derivative works. And these were not separately registered. You don't have to do that. You don't have to register them. No. So then they become independent copyrightable works on their own. Yes. Whether or not they were derivative of the Carolina copyright or not. Right. And the only one who can make a derivative work is the copyright holder. I'm with you. Okay. Can I answer any other questions? No. Thank you. I'll give you a minute. If you wish to take it. Yes, Your Honor. Well, I think I'd like to end where I began, which is that what Brighton has been given is a monopoly on hearts, separate from a watch, even though on the copyright issue what they copyrighted was a watch with parts intricately part of the band and the structure of the watch. But you don't need to register a copyright. It used to be that you needed to register a copyright before you could sue on it, but that's even gone. So why are we even talking about the Carolina watch? They have the purses or bags or whatever you call them, the bags themselves have this heart. They have their own copyright supporting them. Your Honor, there's no evidence that they have a copyright on any heart on any purse, period. How do you bring in evidence of that since you no longer need to register anything? You no longer have to put a C in the circle. It is enough that the work simply be. I remember the days where you had to register copyrights, but it's no longer required. We've gone to the modern age. So why isn't your whole argument about the watch beside the point? Why isn't our whole argument about the watch beside the point? Well, based on our reading, Your Honor, of the Ninth Circuit law and the copyright law, the place to begin is with the item copyrighted. The useful nature of it. But it is. Explain the why. Assume that we determine that the bags with a hollow heart are copyrighted. Does that destroy your argument? Assume that there is copyright on a hollow heart on a purse? Well, I guess then we would have to look at it and see how it looks. Go ahead, look at it. Well, there isn't a copyright on any of the purses. But you're saying assume that there is and assume that these purses are protected by that copyright. That's what I asked. Okay. Assuming that the purses, that there is a copyright on a purse with a heart that looks just like the purse, the heart on the Carolina watch? Assume there's a copyright that looks like this, that they have a copyright on these purses, Exhibit D. The ones, purses with a hollow heart that looks a lot like the Carolina watch purse, the heart. That's it, isn't it? Case over. Well, Your Honor, I guess if you ignore the Ninth Circuit law on the analysis for a useful vehicle, then, and, of course, you're free to do away with that law if you would like. Thank you. Thank you, Your Honor. Case is argued. We'll stand for a minute. All rise. The court for this session stands adjourned.
judges: Kozinski, Trott, Molloy